**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT TAYLOR,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE CITY OF PHILADELPHIA LAW DEPARTMENT and CURRENTLY UNNAMED AND UNKNOWN CITY OF PHILADELPHIA POLICE OFFICERS,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-171** |

# MEMORANDUM

**HODGE, J.** **July 29, 2026**

Before the Court is Defendant's Motion to Dismiss *pro se* Plaintiff's Amended Complaint (ECF No. 12 (the "Motion")), Plaintiff's opposition thereto (ECF Nos. 14–15), and the reply in support (ECF No. 17). For the following reasons, the Motion is granted.

## I. BACKGROUND[1]

### *A. Factual Background*

On March 1, 2024, Plaintiff Robert Taylor was driving his car near 57th and Market Street in Philadelphia. (ECF No. 9 ¶¶ 8–9.) While he was driving, Philadelphia Police Department ("PPD") officers followed him to 52nd and Market Street, where they summoned him to stop. (*Id.* ¶ 9.) The officer asked Plaintiff "unwarranted questions" and began shining a flashlight onto Plaintiff and into his car. (*Id.* ¶ 10.) Plaintiff had not violated any laws to justify a traffic stop, and he was released without citation. (*Id.* ¶¶ 8, 10.)

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

On November 21, 2025, Plaintiff was driving near 62nd and Market Street when he drove past PPD officers. (*Id.* ¶¶ 12–13.) The officers made a U-turn, followed Plaintiff to 58th and Market Street, and summoned Plaintiff to a stop. (*Id.* ¶ 13.) The officers again asked unwarranted questions and sought consent to search Plaintiff's car. (*Id.* ¶¶ 13–14.) Plaintiff declined to provide consent to search his vehicle, and asked if he was free to go. (*Id.* ¶ 14.) The officers then instructed Plaintiff to get out of his car. (*Id.*) One of the officers began searching inside Plaintiff's car. (*Id.* ¶ 15.) Plaintiff was informed that he was stopped because of his license plate cover, although Plaintiff's license plate was not obscured. (*Id.*) No citations were issued. (*Id.*)

Plaintiff alleges that prior to these incidents, he has been harassed by members of PPD since 2024, and that members of the PPD have racially profiled him as a Black man. (*Id.* ¶¶ 2, 17.) Plaintiff alleges PPD has been conducting illegal surveillance on him daily since approximately 2024 via surveillance cameras on the corner of 59th and Market Street as well as other surveillance cameras in the area. (*Id.* ¶ 18.)

Plaintiff alleges that the City of Philadelphia (the "City") and PPD have a history of unconstitutional traffic stops dating back to 1996 based on race or ethnicity. (*Id.* ¶ 20.) Prior to passage of the Driving Equality Act in 2022, over 70% of traffic stops in Philadelphia were of Black citizens. (*Id.* ¶¶ 21–22.) From 2024 to 2025, Black citizens have accounted for 67.83% percent of traffic stops. (*Id.* ¶ 22.) Plaintiff alleges the City has encouraged, tolerated, ratified, and been deliberately indifferent to pretextual traffic stops based on race and detention of citizens without reason or probable cause. (*Id.* ¶ 23.)

### ***B. Procedural History***

Plaintiff filed his complaint in this Court on January 12, 2026 against the City and Currently Unnamed City of Philadelphia Police Officers. (ECF No. 1.) The City filed a motion to

dismiss (ECF No. 8), which was rendered moot by Plaintiff's filing of an Amended Complaint on March 13, 2026 (ECF No. 9). Plaintiff brings the following claims: 42 U.S.C. § 1983 violation of the Fourth and Fourteenth Amendments (Count I); violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) (Count II); and "Supplemental State Law Claims" (Count III). (*See* ECF No. 9.) The City filed the present Motion. (ECF No. 12.) Plaintiff filed his opposition. (ECF Nos. 14–15.)[2] The City filed its reply. (ECF No. 17.)

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of

[2] ECF Nos. 14 and 15 are duplicative of each other. Plaintiff labeled these filings as motions. However, based on the substance of the filing, the Court understands the filings to be oppositions to the City's Motion.

the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

When a plaintiff is proceeding *pro se*, the court must liberally construe the litigant's pleadings. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011). While a *pro se* litigant's pleadings are held to less stringent standards than pleadings drafted by lawyers, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. DISCUSSION

### *A. Monell Liability*

Plaintiff brings his § 1983 claim against the City. In *Monell v. Department of Social Services*, the Supreme Court held that a municipality, such as the City, is only liable under § 1983 when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation, or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional violation. *See* 436 U.S. 658, 690–92 (1978). To appropriately plead a *Monell* claim, Plaintiff must identify a policy or custom and then "plead facts demonstrating a 'direct causal link between [the] policy or custom and the alleged constitutional deprivation.'" *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 675 (E.D. Pa. 2017) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007)).

The first requirement of the *Monell* test is for Plaintiff to establish that "the municipality had a policy or custom that deprived the plaintiff of his constitutional rights." *Ekwunife*, 245 F. Supp. 3d at 674 (citing *Monell*, 436 U.S. at 692–94).[3] A plaintiff "must identify [the] custom or

[3] Alternatively, a plaintiff can plead a *Monell* claim "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To the extent Plaintiff refers to police officers' failure

policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). For purposes of § 1983, a municipal policy is a statement, ordinance, regulation, or decision formally adopted and promulgated by a government body's officers. *Monell*, 436 U.S. at 690. A custom, on the other hand, is not formally adopted but may lead to liability if the "relevant practice is so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). For either a custom or policy, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Once a policy or custom is alleged, the next requirement of the *Monell* test is that the "plaintiff's injuries were caused by the identified policy or custom." *Ekwunife*, 245 F. Supp. 3d at 674 (citing *Monell*, 436 U.S. at 692–94). "A showing of causation, based on a custom, requires a plaintiff to show 'that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.'" *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 439 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (quoting *Bielevicz*, 915 F.2d at 850).

The City asserts that Plaintiff's § 1983 claim must be dismissed because his allegations of custom or policy are conclusory and insufficient to plausibly establish *Monell* liability. In its Motion, the City "proceeds under the assumption that even if Plaintiff could make out an underlying constitutional violation, Plaintiff nonetheless fails to clear the hurdles of municipal

---

to follow established policies and procedures and the City's deliberate indifference to this (ECF No. 9 ¶ 23), this passing reference is insufficient to raise a deliberate indifference *Monell* claim. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court." (cleaned up) (quoting *Laborers' Int'l Union of N. Am. v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).

liability." (ECF No. 12 at 6 n.3.) In opposition, Plaintiff asserts that the City's Motion identifies his allegations which are not conclusory and plead a custom or policy. Such allegations include that the City has a history of unconstitutional traffic stops since at least 1996 based on race or ethnicity, and that the City has encouraged such pretextual traffic stops. (ECF No. 1 ¶¶ 20, 23.) He specifically identifies the 2022 Driving Equality Act, which he asserts led to an approximately 2.17% decrease in traffic stops of Black individuals. (*Id.* ¶¶ 22, 23.) He raises in his opposition that the City is under a consent decree for the same violations of the present case. (ECF No. 14 at 2 (citing *Bailey v. City of Phila.*, 2:10-cv-05952 (E.D. Pa. 2010)).)

Plaintiff's only non-conclusory allegation of custom in the Amended Complaint is the Philadelphia Driving Equality Act. However, he does not include any allegations supporting how the passage of this Act was intended to counteract the traffic stops like the two he experienced, for which he alleges PPD had no basis to conduct the stop and for which he received no citations. Indeed, the Driving Equality Act established as the City's policy that PPD shall not initiate traffic stops for eight specific "secondary violation[s]," absent an officer's observance of a primary violation of the Pennsylvania Vehicle Code. *See* Phila. Code. § 12-1700 *et seq.* The Act therefore did not intend to reduce traffic stops based on no traffic violation, such as the traffic stops Plaintiff alleges he was subject to. Thus, the passage of that Act cannot support a custom for traffic stops based solely on racial animus and no underlying violation warranting the stop.

The consent decree in *Bailey* was not included in the Amended Complaint, and thus the Court cannot consider after-the-fact allegations in determining the sufficiency of his Amended Complaint. *See Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007). The proper mechanism for adding allegations to a pleading is an amendment. *See* Fed. R. Civ. P. 15. However, the Court can consider matters of public record on a Rule 12(b)(6) motion. *See Sands v.*

*McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Because the consent decree in *Bailey* is a matter of public record, the Court does consider and will address it.

While Plaintiff does not allege any facts regarding the *Bailey* consent decree in the Amended Complaint and therefore it cannot be the basis for surviving a Rule 12(b)(6) motion, the consent decree similarly does not help Plaintiff establish custom, or that a custom caused his alleged constitutional violations. In *Bailey*, the plaintiffs included eight Black residents of Philadelphia. *See* Compl. at ¶¶ 9–16, *Bailey v. City of Philadelphia*, 2:10-cv-05952 (E.D. Pa. Nov. 4, 2010), Dkt. No. 1. They allege various interactions with PPD including, but not limited to, traffic stops without cause or justification, during approximately 2008 through 2010. *See generally id.* The court approved and entered a consent decree on June 21, 2011. *Bailey*, Dkt. No. 14. In December 2012, the court issued a stipulated order for compliance with the consent decree. *Bailey*, Dkt. No. 43.

In this present matter, even if Plaintiff had included allegations of the *Bailey* consent decree in his Amended Complaint, it would not have provided a sufficient basis for his *Monell* claim. While a court may fairly infer that the problems that led to a consent decree were similarly occurring in a separate action with a *Monell* claim, there must be sufficient temporal proximity. In *Roman*, for instance, the Third Circuit held that the plaintiff sufficiently pled a *Monell* claim based on a custom of warrantless searches by citing to a consent decree. *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019). While the consent decree was not in place at the time of the plaintiff's search and arrest in May 2014, the investigation that resulted in the consent decree began in May 2011 and ended in July 2014, so the court could "fairly infer" custom based on the consent decree given the temporal overlap. *Id.* The requisite temporal proximity is lacking here.

The *Bailey* consent decree and Plaintiff's allegations do not share a similar temporal overlap as that in *Roman*. "At best, *Bailey* shows that the City addressed issues raised with respect to its stop and frisk policies in 2012." *Jackson v. Moore*, No. CV 18-0785, 2018 WL 4094962, at *4 (E.D. Pa. Aug. 27, 2018). Plaintiff's allegations, on the other hand, are based in 2024 and 2025. The Court thus cannot "fairly infer" that the problems covered in the *Bailey* consent decree continued and proximately caused the violations alleged by Plaintiff. *See also Fong v. City of Newark*, No. CV 22-7243, 2023 WL 8947378, at *13 (D.N.J. Dec. 28, 2023) (finding a seven-year gap between a consent decree and plaintiff's alleged constitutional violations precluded the court from fairly inferring custom to support *Monell* liability).

Because Plaintiff has failed to sufficiently allege a custom that caused his injury, his § 1983 claim against the City is dismissed. However, because Plaintiff could allege more facts to support this claim, amendment is not futile, and so he will be granted leave to amend.

### *B. Title VI*

Title VI of the Civil Rights Act of 1964 prohibits discrimination based on race, color, or national origin under any program or activity that receives federal financial assistance. 42 U.S.C. § 2000d. A threshold question for a Title VI claim is whether the alleged racial discrimination occurred under a program or activity that receives federal financial assistance. *See Burks v. City of Phila.*, 950 F. Supp. 678, 682–83 (E.D. Pa. 1996). Further, a private plaintiff must be the intended beneficiary of the federal spending program, or within the "zone of interest" for the federal funds. *See Thompkins v. McKeesport Police Dep't*, No. 2:24-cv-00008, 2025 WL 957187, at *11 (W.D. Pa. Mar. 31, 2025) (noting that courts within the Third Circuit regularly apply both the "zone of interest" and "intended beneficiaries" tests).

The City argues that Plaintiff's Title VI claim fails because it is insufficient to allege that the City, as a whole, received federal funding, Plaintiff failed to plead that he is the intended beneficiary of the federal spending program, and that suits by private plaintiffs under Title VI can only be based on intentional discrimination, and not disparate impact. (ECF No. 12 at 9–11.) Plaintiff pleads that the City "and its law enforcement activities" have been funded substantially with federal funds. (ECF No. 9 ¶ 31.) Plaintiff has pled no facts to demonstrate that he is the intended beneficiary of whatever funds the City "and its law enforcement activities" receives.

Ultimately, Plaintiff's Title VI claim fails because he is unable to satisfy this threshold question and plead "a logical nexus between the use of federal funds and the alleged discrimination." *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 457 (W.D. Pa. 2008). General funding of government or government services is too attenuated to support a Title VI claim. *See Thompkins*, 2025 WL 957187, at *11. Further, Plaintiff does not allege that federal funding was specifically directed to the police department or its traffic enforcement efforts, nor how those funds are connected to the alleged discrimination.

Because Plaintiff has failed to sufficiently allege a specific program or activity that receives federal funds, and failed to articulate a logical nexus between federal funds and the alleged discrimination, his Title VI claim against the City is dismissed. At this juncture, because Plaintiff could allege more facts to support this claim, the Court has determined that amendment is not futile, and so Plaintiff will be granted leave to amend.

### *C. State Law Claims*

The City argues that it is immune from Plaintiff's state law claims under the Pennsylvania Tort Claims Act ("PTCA"). Plaintiff's "supplemental state law claims" include "false arrest, unlawful seizure, unlawful detention, stalking, harassment, ethnic intimidation, defamation,

invasion of privacy, including false light privacy, and intentional infliction of emotional distress." (ECF No. 9 ¶ 35.)

The PTCA grants the City immunity from tort liability with nine limited exceptions of negligent acts. 42 Pa. C.S.A. §§ 8541–42; *see McShea v. City of Phila.*, 995 A.2d 334, 341 (Pa. 2010). The exceptions include: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse. 42 Pa. C.S.A. § 8542(b)(1)–(9). Because none of Plaintiff's state law claims fall within the limited exceptions, the City is entitled to immunity. Plaintiff's state law claims are therefore dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed. Count I (§ 1983 liability) and Count II (Title VI) are dismissed without prejudice, and Count III (state law claims) is dismissed with prejudice. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

______________________________

**HODGE, KELLEY B., J.**